We're happy to hear your argument in our second case, number 166843, Halcomb v. Ravenell. Thank you, Your Honor. Good afternoon, and may it please the Court. My name is Nelson Tamarra, and I represent the defendant appellant in this case, Ms. Tamarra Ravenell. This case has a tendency to focus largely on institutional policy and procedure of SEDC, or the South Dakota Outfit, that the procedural due process claim at issue in this matter is one for monetary relief against my client in her personal or individual capacity. And at the time of issue, my client was a classification caseworker at Lieber Correctional Institution, and that was in April of 2016 when she chaired the committee that recommended the assignment of the plaintiff to security detention status. And we're here today before this Court on de novo review on the issue of whether my client, Ms. Ravenell, is entitled to qualified immunity because either A, the undisputed facts do not demonstrate a violation of the minimal level of process established by Hewitt v. Helms in 1983 for security detention, as cannot show a violation of the due process clause of the Constitution, or we're entitled to qualified immunity because the plaintiff cannot demonstrate that the particularized right that he claims was or is clearly established in a way that would have put this issue beyond debate and rendered it plain to Ms. Ravenell that her actions somehow violated the law. And in fact, nothing could be further from the truth here because Ms. Ravenell, who is not an executive-level policymaker but a classification caseworker who follows policy, was acting at the time at issue under what was then a new policy that had been specifically amended to address certain legal claims and decisions, specifically including the 2015 opinion of this Court in Nkumah. And I understand two members of the panel. Go ahead, Judge Quattlebaum. So, Mr. Chair, I want to make sure I understand there. Yeah, I understand the analysis and we'll hear about that, I'm sure, coming up about how the process that was provided here relates to Hewitt. But I want to make sure I understand the perspective you're asking us to look at. Are you suggesting we should do something other than compare the process provided to Hewitt? Or are you saying that in addition to that, we're supposed to look at it from the perspective of your client and her particular position there at the center? Well, yeah, Your Honor, that's a good question. I think that the answer might depend on which prong of the qualified immunity analysis. Assume we're looking at the second part, not whether there's a violation, but whether it's clearly established. Okay, Your Honor. If we're looking at the clearly established prong, I think the question then is to first identify the right that's being claimed with an appropriate level of specificity and then see whether that right is so clearly established that a reasonable officer in my client's position would have, it would have been claimed to somebody in my client's position that she was acting in violation of the law. Does that answer your question? Yeah, it sounds like you're, yeah, I think I do. All right, I appreciate it. Go ahead. Your Honor, we would respectfully submit that the district court erred in two different respects, either of which is sufficient for reversal. First, on the first prong of qualified immunity, the district court did not evaluate the alleged due process violation under the Matthews versus Eldredge standard, which this court has said most recently in the Williamson case in 2018 must be done, and the Williamson case uses that mandatory language. If you're going to evaluate a due process, procedural due process violation, you must apply the Matthews versus Eldredge standards to the claim. Both parties in this case, Your Honor, thoroughly briefed the Matthews test, and it is our contention that the application of Matthews, the Matthews factors to this case indicates that plaintiff was plainly afforded basic due process. All right, that's the first. And how do you, how are you defining the right to due process here that you say he was afforded? Oh, okay, Your Honor. On the first, as far as the first prong of analysis concerns, where we actually determine what extent of the law is, I don't think we need to create any new terminology as perhaps the district court did, but simply look to the right as it has been defined by the district court. So I think if you look at Hewitt versus Helms, which is certainly the seminal case, the Supreme Court. So what is the due process right that you're talking about? Is it fair notice? No, Your Honor, the right is, as defined in Hewitt, is some notice of the charges. Some notice. Okay, so what notice did he get? Okay, that's a great question, Your Honor, and we if you look at the record, it's uncontrovertible that the plaintiff had noticed, and the charge is not a perfect term here because there were no new charges against the plaintiff in this case. This is not a disciplinary determination, the security determination. So where shall I look in the record to see that it's uncontroverted that he had notice of this hearing before he showed up to the hearing? Your Honor, to answer your question, we don't contend that he had notice of the security detention review. We do not contend that. Okay, well isn't that, I thought that was the problem here or the the challenge here. That is the challenge, Your Honor. The plaintiff says he had a right to know when the SD board would convene, and our position is his right was not to know when the board would convene. His right is to notice of the reason he is being placed in security detention, and that he have some opportunity to address that reason, and that's the description. Doesn't he need to have fair opportunity to address that reason? I certainly would not dispute that, Your Honor. Okay, go ahead. How did he have fair opportunity to address it? Well, Your Honor, when he was, to back up a bit, this all originates from March the 23rd search and seizure of his, or search of his cell. Right, when they found all that contraband. Right, so several days later, he received notice that those charges would be brought against him. Two weeks later, he received a full disciplinary hearing with full due process as required. On April 14th, and then April 18th was the hearing to change his security status, so when did he get notice of the April 18th hearing to change his security status? He, once he arrived at that hearing, Your Honor, that's not a, again, that is not an issue that is a fact and dispute in this case, but the point here, we believe, is that the type of review that was in place is supposed to be an informal non-adversarial process, and it may satisfy due process for that hearing to have gone forward without his presence. Counsel, could I, Counsel, could I, the, and my question really relates, does the record help with this question? Are the factors that are being considered at the hearing that is the subject of the complaint here, where he didn't receive advance notice, are the, I think I'm saying something you agree with, or I didn't get advance notice of that hearing, but is the subject matter of that hearing or the reasons for the detention in that hearing the same reasons that were the subject of the prior disciplinary hearing? Yes. And if so, does that matter? Yes, Your Honor, we think it, it certainly, I don't know that it's necessary, but it certainly bolsters our position in this case. Well, it is necessary, isn't it? I mean, I would think it would be critical to your case. Well, Your Honor, if he didn't have prior notice of something of this, of the underlying charges, then he would have had no notice. True, Your Honor. He had to at least know, he has to have known the purpose for which he's being placed on security detention, which he did. And there's no doubt. I thought your point, Counsel, was, and, you know, we, that as long as he got notice at the hearing, that it was, it's not clearly established you're entitled to advance notice, but that prior hearing nevertheless is some notice. Is your, it, I may be misunderstanding your position. If you could just clarify what it is, so we'll be better able to decide. Right, Your Honor. And one point that might help illustrate that is. Well, could you just answer Judge Quaid Obama's question? Because I think that was a good clarification. Which is your argument? That he had prior notice and that second hearing. Well, it is, it is critical that he knew of the reason he's on security detention. And that reason originated from the disciplinary hearing several days before. Now, we just, I'm trying to separate out notice of when a review is going to take place and notice of the subject matter for which you're being held in security detention. And the notice that the Constitution requires is notice of the reason for your detainment. It didn't matter if they had that detention review a day before or a day after. And it didn't matter if he knew where he was going. It matters that once he came there, he was then informed of the reason for the review. And the basis for his placement on security detention was an objective basis that came from his prior conviction on the disciplinary charges. So the prior hearing was necessary to give him notice in terms of his knowledge of the reasons. But as I previously mentioned, I think the Constitution would be satisfied if you had the review without his presence, as long as after that review, he received information informing him of the reason he's being detained and has an opportunity to respond to that. That is what the minimal due process requirements are. And, you know, we're separating the due process under Hewitt from the due process under Wolf. What about the 48-hour notice policy? I understand you don't think this applies, but it does seem to apply because the policy itself states that recommendations for placement and security detention status within the definition includes, is included in the definition of status change for which the 48-hour notice applies. Your Honor, I think... So let me start again. The inmate classification plan policy provides a re-classification review will take place on an annual basis. Classification review may also be conducted as a result of a status change. Inmates will be provided with notice of their hearing at least 48 hours prior to the same. And the policy then defines status change to include recommendations for placement and security status, which is what was happening here, I thought. Right. Your Honor, there are many policies in place, but the STDC's position here is that once you are in the RSU, which is where he already was located because he was on disciplinary detention for a limited amount of time period, hearing that the only applicable policy is the RSU policy. And again... Well, where does it say that? Well, Your Honor, our clients have testified to that in the affidavits that are in the record. So it's just there saying that. Where is it written down? Well, the RSU policy says it applies. The RSU policy is completely in the record on page 118. And isn't that the one that provides the 48-hour notice? Well, no, Your Honor. There is a 48-hour notice provision contained in this policy for transfer to SSR or the Supermax Union, just as the Supreme Court required in Wilkinson. And for a status change. And a status change includes placement and security detention status. I guess you're saying he was already placed in security detention status, and that's why it doesn't apply? He was already in the restrictive housing unit, and therefore... Okay. And Judge Quattlebaum, I'm sorry I interrupted you. No, I appreciate that clarification. But Mr. Chandler, I mean, isn't your position on that, that even if you're wrong and you are entitled to that, that's maybe a statutory or administrative violation? But the issue here is whether or not this process satisfies Hewitt. Because otherwise, you're walking into a summary judgment question if you're debating those issues, right? You're absolutely correct, Your Honor. You're absolutely correct. I'm telling you what our understanding of the policy is, but what the policy says and what it doesn't say doesn't impact the simple question, which is whether or not this procedure satisfied minimum due process. That's a constitutional question, regardless of whether an employee maybe misconstrued a policy. It doesn't matter. They're not constitutionally liable for a misreading of a policy. They're liable if they violate the procedural due process right to complain. I agree, Your Honor. I'm out of time. You are, yes. We're happy to hear from you, sir. Good afternoon, Your Honor. May it please the Court, my name is Corey Patterson. I'm with Nelson Mullins, Raleigh & Scarborough, and I represent Mr. Fred Halcombe, who took the felony in this matter. In Baldwin v. Hall, it states that for more than a century, the central meaning of procedural due process has been clear. Parties whose rights are to be affected are they must first be notified. Your Honor, we respectfully request that, from the District Court's ruling, Mr. Halcombe was denied the very basic right, that's the right to notice, prior to a serious deprivation. As Mr. Chandler has already indicated, they admit that he didn't receive notice prior to this classification hearing. It's clear on the record, Mr. Halcombe was actually denied notice prior to his classification hearing, behind him for security detention. Mr. Patterson, if I could interrupt you just briefly. Where is your authority that in a confinement-type decision, that an inmate is entitled to advanced notice of the hearing? Your Honor, that's a good question, Judge Bartlebaum. I think that we turn, you know, to answer that question, I think we have to look at Nkuma, and we also have to look at notice. I do believe that if you look at those cases, it talks about having meaningful review. Meaningful review is afterwards, right? You're right to challenge it after the decision is made. That was important in Nkuma, where there was no such thing. But in terms of advanced notice, I think, you know, the Wilkinson case, I think that's, hi, I may be mixing up my cases with, that start with W, but I think that case did maybe have advanced notice, but Nkuma was pretty clear that we're not saying that type of notice is required. And I'm thinking, we said Nkuma advanced notice was required. Maybe it should be, and maybe it's a violation, but the question is whether it's clearly established. And I didn't see that in Hewitt, and if I'm missing it in either Supreme Court or our cases, that advanced notice is required, I'd like to hear that. If not, it seems like it's kind of hard to argue that it's clearly established. Your Honor, I do believe that it's clearly established. And certainly when you look at Williamson, Williamson provided at least that, and Mr. Williamson was a pretrial plaintiff, but Williamson, they said that you have to have notice prior to a deposition. And so it's kind of a biggest question, like what exactly is notice, right? Notice is the ability to know something in advance, you know, just taking it in the context of our everyday ins and outs of being attorneys. We notice depositions, that's to know something in advance. You know, Mr. Halcombe in this case didn't know anything outside. He had just finished his hearing on April the 14th. He's put in front of a board on April with not knowing exactly what that hearing is for. And so I think that when you look at the opinions of Nkuma and Williamson, I think that they moved towards that type of notice. Mr. Patterson, don't all of those opinions, Hewitt, Nkuma and Williamson say that some notice is required? And I guess you're arguing here that your client received no notice. However, is that right? That's correct. He received no notice. However, what about the fact of the hearing four days prior? Didn't that provide your appellee with some notice? No, Your Honor, I don't, I don't believe so. And I think, you know, when Mr. Towne was speaking, you know, there are two separate things. So the hearing that he was having regarding his infractions and disciplinary issue. That was once that was finished, he was given a sentence. That sentence was 60 days in disciplinary detention. And at that point, he was starting to serve his disciplinary detention sentence. And then four days later, he gets put in front of the ICC board. And he's already received his 60 days disciplinary detention. What is that hearing for? You know, that they right. But Mr. Patterson, if I grant you that it seems, it seems as if he was that hearing began, and he was transported to that hearing, and he did not know in advance what it was for. But I think he contends that he should have had advanced notice so that he could have been prepared to talk about what his cell might might have done or not done. And in that prior hearing, he was actually successful in defeating one of the claims, a cell phone claim by making that showing. And so I'm, maybe I'm getting into an issue that's different than was processed granted as to whether there's, you know, what whether it made a difference. But but it but it seems to me the whole whole reason he claims he did not have notice is kind of inconsistent with what happened in the prior hearing. And I understand exactly that, Your Honor. You know, Mr. Halcombe, when he initiated this suit, he argued that he was denied that 48 hours in advance, because he felt that he did not belong in security detention, because his roommate claimed for claimed for stuff, mainly the possession of hacksaw. So in claiming the possession of the hacksaw, that removes the class one escape tool. I believe that's that he was convicted of the class one escape tool. That eliminates him having met one of the factors in being put into security detention. And so with removing that, that that was his motivation, actually, getting his roommate, uh, at least take the blame for that, that then it's him to we would argue, very potential. Do you have anything further counsel? Uh, yes, I think, Your Honor, it would be at least if we could look at just a few things. I go back to the words of meaningful review. And I do that solely because it was mentioned in Nkuma, but it was also mentioned in in Williams. And, you know, the having a meaningful review, although that's for, you know, afterwards, just follow on point out, I do believe that it goes to the whole process that's due for an inmate. You know, in order to have a meaningful review, you actually have to know why you're there, why you're present actual deprivation. Mr. Alton did not have, he didn't have notice of any of that. I think in Nkuma, just after you let me know if I go straight on this, but in Nkuma, court mentioned briefly about the presence of the actual inmate being there for his review. And so I think for the policy that we have for us right now, Mr. Alton doesn't have notice. There's really no reason for him being. It doesn't make the hearing very meaningful for him. He's not able to provide anything else. Well, opposing counsel, I thought he said he might not have even needed to be there because it's a non, he categorized it as a non-adversarial proceeding that he didn't even need to be there. So I wonder why they even brought him there. That must've needed to be there. I think he, I do believe, you know, in looking at the policy for SCVC, due to Nkuma, but also I think the policy that SCVC is looking at now or has before this court now is they use kind of the Wilkinson type of multi-tier, you know, making sure that there were things in place. And I think in Wilkinson, the court mentioned, you know, the presence of inmate actually being there. But again, I would say that the inmate does need to be there. I do think that that's, that should be looked at. But, but Mr. Patterson, I think, I mean, and it may be under a Matthews analysis, we really haven't spent a whole lot of time with that, but doesn't Williamson pretty squarely place our focus on Hewitt? I mean, Williamson says that based on the opinion in Akuna, our question is what does Hewitt require? And I, and I, and I guess there could be subsequent cases that refine that, but, but I mean, but, but doesn't Hewitt say, you know, what Judge Thacker just, I think, attributed to your colleague that a informal, non-adversarial process satisfies process, satisfies due process, if you are told of the reasons for the charges and then given a right to challenge them, even if it's after the fact? Yes. Yeah. And that is true, Your Honor. Yes. You know, so he wouldn't have had to be there under Hewitt, at least. Um, I would, I would say, Your Honor, that he would, that's a, let me take a step back again, because I see that that's a, that's a difficult question to answer solely because although it's non-adversarial, he still would have to, it would pull us back to why he would need, you know, notice and a reasonable opportunity to be heard. And so, so I think that they also mentioned, you know, we're focusing on the notice piece portion, but I also think that the, the opportunity to be heard is kind of one of the mainstays of procedural due process. And so with him being there, you know, that this opportunity to actually be heard, please object to the ICC board and say, Hey, no, that, that's not, you know, my roommate, he also assumed that particular, he assumed that. Yeah. And so that's what I would think, that the opportunity to be heard puts him actually there at the age of two. I can't hear you at all. Oh, I stopped talking. Well, do you have anything further for us? Nothing further from, from the court. I think I would, or nothing further from the appellate, your honor. I think I would at least mention that Ms. Rabanel, she is the chair of the ICC board. She has the ability, you know, I think that, you know, pulling the step back, you know, with her being able to decide whether Mr. Alcom remains in security detention, placement, she has ultimate control of when those hearings are made and scheduled. You know, she has enough way as well as enough discretion, at least to administer the policy correctly. And I think Nkuma kind of put everyone on notice that, you know, the security detention, which is essentially a solitary confinement, it's an administrative segregation, it's a solitary confinement, especially when you look at Mr. Alcom's affidavit explaining the difference between the general population and security detention. But Ms. Rabanel had the ability to, at that point, you know, pulling Mr. Alcom in, I think the time was like 11-18 for the hearing. He gets in there, he says he's got the general population there, you know, she could have just said, all right, we'll just end it, we can provide you notice, 48 hours notice that, you know, throughout the entire SCDC policy, we'll provide you 48 hours notice. Then you can explain to you reasons why recommended security detention. That would have been, I think that would have helped, you would, that would have created an issue, not having that notice prior to that hearing. Well, there is, you recognize the difference between what would be, what you would like, what would be preferable, what would be the highest standards of good conduct and what is constitutionally required, right? Oh, absolutely, Your Honor. What I would like does not go into this analysis at all. But what is constitutionally required is, you know, is some notice and is what the district court in this case described as fair notice. And that did not happen in this case. There was no and no notice, notice is required. I think we understand your position. Thank you. Counsel, is there any rebuttal? Briefly, Your Honor, I'd like to respond to a question Judge Thacker raised about whether or not the inmate needed to be present. And I think I want to clarify my answer to distinguish between constitutional requirements and what the policy requires. Constitutionally, if you look back at the Hewitt case, the court states that ordinarily a written statement by the inmate will accomplish this purpose of presenting his views. Although prison administrators may find it more useful to permit oral presentations in cases where a written statement would be ineffective. So that's the basis for my statement about whether he needed to be present. Right, and that goes to the opportunity to be heard. It's notice and opportunity to be heard. So do you concede or not that the appellee was required to be provided some notice? I couldn't hear the center part of the question. Do you concede or not that the appellee was required to receive some notice prior to this April 18th hearing? I do not concede that he was required to receive notice of when the S.P. hearing would occur. So do you agree he was required to receive some notice of what? Well he, then Kuma summarizes this wonderfully. It says that the inmate must receive quote notice of the grounds for his ongoing confinement. So the plaintiff at some point, not necessarily before the hearing, but certainly makes more sense for him to have knowledge of what the subject matter is, which he did. And you say he received that on April at the April 14th hearing, right? He received that when he received notice of the April 14th hearing on March 31st. He received that at the April 14th hearing and then he received that again when he got the recommendation from the security detention board as shown through his appeals. He filed two appeals that are in the record that demonstrate the depth of his knowledge regarding both institutional policy and law. And just so I understand what was happening here, opposing counsel said that the you know that the first hearing April 14th was the was where he was found guilty of for the sentence for that. So what was the second hearing for? Okay so the first hearing was a disciplinary hearing under Wolf. Right. The hearing that we're referring to as a hearing is more correctly perhaps described as a board review. It is simply a security detention review of the existing record to ensure basic fundamental process is met. And the way the Wilkinson in 2005 the Wilkinson court described that as allowing the inmate a rebuttal opportunity so that the inmate is not mistaken for another or singled out for insufficient reasons. So those are the basic things that are being reviewed at that SD review your honor. Are you the inmate and is this your record and based on this record. And when was he told that those were the basic things that were going to be reviewed such that he could have a rebuttal opportunity? At the hearing at the SD board review. But then again he received notice subsequent to that of the decision which he then is allowed to further voice his position in response to. Which he did twice through a step one appeal and a step two appeal. And as far as his presence the second part of that position your honors after the policy was improved to require physical presence. So it's not it's not an optional situation it's there per policy if not per Hewitt versus Helms. Now he could refuse to attend but he has the right to be present. And so your honor at its heart plaintiff's original complaint in this case was that he needed to know the date and time of the review so he could have witnesses there. And plainly he has no right to witnesses under a Hewitt v Helms review. And that in and of itself I think encapsulates the problem with his claim. He is blurring or attempting to blur the line between due process supported for a disciplinary review which he fully went through and the due process associated with a security review that is not punitive but for safety and security of the institution which by definition requires a lesser standard. And so your honor we think that applying that lesser due process standard using the Matthews factors the only conclusion is that he received the minimal due process that is required under this under the Supreme Court precedent and that's just on the first prong of qualified immunity. We've addressed the second prong in our briefing. Thank you. I see that I'm out of time and happy to answer your questions but I thank the court for your consideration. Thank you very much. We'll go directly to our third case.
judges: Diana Gribbon Motz, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.